John H. REDDING, Plaintiff and Respondent,

v.

Rodney H. BRADY, President of Weber State College et al., Defendants and Appellants.

No. 16282.

Supreme Court of Utah.

Feb. 4, 1980.

---

Robert B. Hansen, Atty. Gen., Frank V. Nelson, Brinton R. Burbidge, Asst. Attys. Gen., Salt Lake City, for defendants and appellants.

John Preston Creer and Kent B. Scott of Senior & Senior, Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

John Redding, editor of the Weber State College student newspaper, THE SIGN-POST, filed this action to compel defendants to make available to him the names of employees of Weber State College and the gross salaries paid to them. From a judgment requiring the defendants to do so, they appeal.

Their argument is that release of such salary information will violate the right of privacy of employees of the College, and will have a detrimental effect upon its ability to attract and maintain appropriate and desirable staffing of its faculty.

1. Sec. 63–50–1, et seq., U.C.A.1953.

2. Sec. 63–50–3, U.C.A.1953.

The Utah Information Practices Act of 1975 [1] directs the State Records Committee (hereinafter referred to as the Committee), a State administrative agency, to classify data "kept by state government" on individuals as either "public," "private," or "confidential." [2] The Committee adopted a rule classifying salaries paid employees of state agencies and institutions as "public data" and available for public inspection.[3]

Shortly after the start of the school term in the fall of 1978 plaintiff Redding, by letters sent to the Committee and the president of the college requested the names and the gross salaries paid to employees of the College. The refusal of that request resulted in this action.

After this controversy arose the Committee determined that in adopting its rule classifying identifiable salary information as "public data," it had not complied with prescribed procedure for giving notice and permitting public participation.[4] On November 7, 1978, it gave appropriate notice that a public hearing would be held thereon on December 21, 1978. On November 30, 1978, plaintiff filed a motion for judgment on the pleadings; he also moved the court for an injunction preventing defendants from conducting the public hearing scheduled for December 21 on the basis that the Committee had no authority to interfere with his right of access to the information demanded.

On December 11, 1978, the district court granted both of the plaintiff's motions on the basis of his determination that:

. . . Payroll records reflecting the personally identifiable gross salaries of persons employed by and on the payroll of Weber State College constitutes public information which is subject to the inspection, examination and copying by the general public.

All other personally identifiable financial information . . . including all withholding information is private data and is

3. See Minutes of State Records Committee, July 28, 1977.

4. See Sec. 63–46–5, U.C.A.1953.

privileged, which information is not available to the general public for inspection,

\* \* \* \* \* \*

. . . defendants are under a legal duty to provide the general public access to information relating to the names and corresponding gross wages of the employees of Weber State College as provided in this order at times and upon terms which are reasonable.

There are certain statutory provisions of concern on the problem involved herein. Section 78–26–2, U.C.A.1953 (of the Public and Private Writings Act) provides:

*Right to Inspect and Copy*—Every citizen has a right to inspect and take a copy of any public writing of this state except as otherwise expressly provided by statute.

Section 63–2–61 of the Archives and Records Service Act defines "public records," "public offices" and "public officers":

(1) The words "public records" mean all written or printed books, papers, letters, documents, . . . and other records made or received in pursuance of state law or in connection with the transaction of public business by the public offices, agencies, and institutions of the state

. . .

\* \* \* \* \* \*

(3) The words "public offices" and "public officers" mean, respectively, the offices and officers of any . . . institution or other agency of the state . . .

Sec. 63–2–66 prescribes duties with respect to maintaining public records:

The archivist shall keep the public archives in his custody in such arrangement and condition as to make them accessible for convenient use and shall permit them to be inspected, examined, abstracted or copied at reasonable times under his supervision by any person.

It seems so plain as to hardly require stating that the Weber State College is a "state institution" within the meaning of the statutes referred to.

In considering the application of our statutory provisions to the problem created by the plaintiff's request, it is deemed appropriate to make some observations concerning the right of privacy. We agree with the general proposition that there is and should be such a right which protects against any wrongful or unseemly intrusion into what should properly be regarded as one's personal affairs.[5] It is concededly somewhat difficult to define with precision the line of demarcation between that which is public and that which is private. As in so many areas of human affairs, there is the daylight, the dark, and the twilight in which the lines are blurred, and that is where the problems arise.

[1] It seems sufficient for our purpose herein to say that what the right of privacy protects is to be determined by applying the commonly accepted standards of social propriety. This includes those aspects of an individual's activities and manner of living that would generally be regarded as being of such personal and private nature as to belong to himself and to be of no proper concern to others. The right should extend to protect against intrusion into or exposure of not only things which might result in actual harm or damage, but also to things which might result in shame or humiliation, or merely violate one's pride in keeping his private affairs to himself.[6]

The problem we here confront is how the salary information requested by the plaintiff fits into the principles just stated and the extent to which that information is of private concern, and weighing that against the right of the public to know what goes on in its public institutions.

---

**5.** See *Katz v United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1970). See general-ly, 16A Am.Jur.2d, Constitutional Law, Sections 601–603; 77 C.J.S. 396 *Right of Privacy*.

**6.** See texts, supra note 5, and cases cited therein.

Both our state and federal constitutions contain assurances as to freedom of information and expression. The beginning declaration of our state constitution, Sec. 1, Art. I, states:

All men have the inherent and inalienable right . . . to communicate freely their thoughts and opinions . . .

This is further articulated in Art. I, Section 15 thereof which states:

No law shall be passed to abridge or restrain the freedom of speech or of the press.

It seems hardly necessary to do more than mention the freedoms of speech and of the press assured by the First Amendment of our Federal Constitution and the extensive adjudications thereon.[7]

■ Inasmuch as the very existence of public institutions depends upon finances provided by the public, it does not strike us as being discordant to reason that the public would want to know, and ought to know, how their money is spent. In regard to the defendant's expressed fears that the exposure of such information will have an adverse effect upon its ability to operate the College, it seems to us that there is even a greater potential for evil in permitting public funds to be expended secretly. In this connection it is also to be realized that by accepting employment at the college its employees are not merely private citizens, but become public servants in whose conduct and in whose salary the public has a legitimate interest.[8]

We regard it as in conformity with the law, and wise as a matter of policy, to require disclosure of information in which the public has an interest, insofar as that can be done without undue intrusion into the right of privacy of individuals. In our case of *Deputy Sheriff's Mutual Aid Association of Salt Lake County v. Salt Lake County Deputy Sheriff's Merit Commission*,[9] we stated that the records of performance and ratings of deputy sheriffs were contained in public records, and were therefore open to public inspection, even though personal in nature.

Substantially similar in reasoning is the case of *O'Brien v. Digrazia*[10] in which the court discussed such a right of privacy as to salary information and the court observed that:

Privacy in the sense of freedom to withhold personal financial information from the government or the public has received little constitutional protection.

This same view has been approved in other jurisdictions in upholding statutes and ordinances requiring disclosure of the type of information here involved, even though except for the public interest therein, disclosure would have invaded the right of privacy.[11]

■ In harmony with what has been said herein, it is our conclusion that the rights of freedom of speech and of the press, and of the public to have and to publish the information as to the salaries paid to employees of the college, outweighs considerations as to the right of privacy of the employees, or

---

7. See generally, 16A Am.Jur.2d, Constitutional Law, Sections 496, et seq.

8. In *Lehrhaupt v. Flynn*, 140 N.J.Super. 250, 356 A.2d 35 (1976), the court stated:

By accepting public employment, an individual steps from the category of a purely private citizen to that of a public citizen. . . subordinate his private rights to the extent that they may compete or conflict with the superior right of the public to achieve honest and efficient government.

9. 24 Utah 2d 110, 466 P.2d 836 (1970).

10. 544 F.2d 543 (1st Cir. 1976).

11. See *Fritz v. Gorton*, 83 Wash.2d 275, 517 P.2d 911 (1974); *Stein v. Howlett*, 52 Ill.2d 570, 289 N.E.2d 409 (1972); *Illinois State Employees Ass'n v. Walker*, 57 Ill.2d 512, 315 N.E.2d 9 (1974); *In re Kading*, 70 Wis.2d 508, 235 N.W.2d 409 (1975); *Lehrhaupt v. Flynn*, 140 N.J.Super. 250, 356 A.2d 35 (1976). In *City of Carmel-By-The-Sea v. Young*, 2 Cal.3d 259, 85 Cal.Rptr. 1, 466 P.2d 225 (1970), the California Supreme Court held a state financial disclosure law to be unconstitutionally overbroad. However, a subsequent disclosure statute that was more limited in its disclosure requirements was upheld in *County of Nevada v. MacMillen*, 11 Cal.3d 662, 114 Cal.Rptr. 345, 522 P.2d 1345 (1974).

of the institution to carry on its operations in secret. Accordingly, the judgment that the plaintiff and other members of the public are entitled to it is affirmed.[12] No costs awarded.

MAUGHAN and HALL, JJ., concur.

WILKINS and STEWART, JJ., concur in result.

12. We so decide this case on the record as presented to the district court, and on the basis of our statutory law. We have taken judicial notice of the subsequently enacted Chap. 113, S.L.U.1979, Sec. 5 of which provides that personally identifiable salary data of employees of institutions of higher education is "private information" and subject to disclosure only to the extent provided by the Utah Information Practices Act.