STATE of Utah, Plaintiff and Appellee,

v.

Michael Anthony ARCHULETA
and Lance Conway Wood,
Defendants.

Society of Professional Journalists, Utah
Chapter, and Deseret News Publishing
Company, Intervenors and Appellants.

No. 890504.

Supreme Court of Utah.

July 16, 1993.

R. Paul Van Dam, Atty. Gen., Annina M. Mitchell, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Kathryn H. Snedaker, Salt Lake City, for intervenors and appellants.

HALL, Chief Justice:

Intervenors Society of Professional Journalists, Utah Chapter, and Deseret News Publishing Company (the "Press") appeal the district court's denial of public access to certain pretrial documents and exhibits received in evidence at the preliminary hearing in a criminal case. We affirm the district court's order denying access to the requested material.

## I.   FACTS

Defendants Archuleta and Wood were arrested and charged with the torture-slaying of Gordon Ray Church.[1] The homicide was committed in a particularly depraved manner, consisting of physical torture, anal object rape, and massive bodily injury to the victim prior to death. Because of the murder's sensational circumstances, the prosecution sought and obtained an order sealing the court files of the committing magistrate to protect the integrity of the ongoing investigation.[2] Just before the preliminary hearing, Archuleta moved to close the hearing to the public to protect his and Wood's rights to a fair trial and an impartial jury.

The Press sought intervention for the purpose of removing the seal on the record. The magistrate permitted intervention but declined to remove the seal on the court's files. The magistrate concluded that the preliminary hearing would be pervaded by prejudicial testimony and sensitive and inflammatory evidence, including evidence possibly inadmissible at trial. To protect defendants' right to a fair trial, he ordered the preliminary hearing closed to the public and the record of the hearing sealed.

After the preliminary hearing, in which both defendants were bound over to the fourth district court, the Press continued its efforts to access the pretrial documents and the preliminary hearing transcript. Judges Ballif and Park, sitting jointly, conducted several hearings on the matter.[3] At the second hearing, beginning on September 7, 1989, the court heard testimony from several witnesses and received evidence concerning jury studies, print and electronic publication of the case, and reports reflecting the experience of the fourth district in seating an unbiased jury in a simi-

---

1. *See State v. Archuleta,* 850 P.2d 1232 (Utah 1993).

2. The court files contained probable cause statements, affidavits in support of search warrants, and witness subpoenas.

3. Because defendants were tried separately, both of the assigned trial judges sat at the joint hearings.

larly sensitive case. The prosecution also presented evidence relating to its ongoing murder investigation, which it claimed would be jeopardized by publication of the desired information. The court heard oral argument and received extensive memoranda.

After the evidentiary hearing, the court removed the seal on the preliminary hearing transcript. However, it continued the seal on the pretrial documents. The court also determined that all of the exhibits admitted into evidence at the preliminary hearing, including tangible physical evidence associated with the murder, would be sealed until after the trial.

The Press appeals the trial court's ruling prohibiting public inspection of the documents filed in conjunction with the preliminary hearing and the exhibits admitted there. It claims that the Press has a right to access the documents and exhibits under the First Amendment to the United States Constitution, article I, section 15 of the Utah Constitution, and the common law. For purposes of analysis, we address separately the pretrial documents and the exhibits admitted at the hearing.

## II. PRETRIAL DOCUMENTS

■ Whether the public (and therefore the media) has the right to inspect and copy certain pretrial documents is an issue of first impression to this court. The Press notes that we have recognized the public's constitutional right of access to criminal preliminary hearings.[4] It asks us to extend that right to documents associated with the presumptively open preliminary hearing. The Press raises arguments under the United States and Utah Constitutions and the common law. We deal with each in turn.[5]

### A. First Amendment to the United States Constitution

In *Press Enterprise II*, the United States Supreme Court held that a First Amendment right of public access attaches to criminal preliminary hearings, but it did not discuss access to documents associated with those hearings.[6] However, the court did fashion a test for determining when the First Amendment mandates public access.

■ Under the Supreme Court's test, a court first must determine whether a "qualified First Amendment right of public access" exists for the particular proceeding (in this case, documents related to the proceeding).[7] A qualified, or presumptive, right of access exists only if (1) there has been a tradition of accessibility to the information desired, and (2) public access would play a significant positive role in the functioning of the process in question.[8]

■ Even if a qualified right of access to a criminal proceeding or judicial records does exist, that right is not absolute.[9] Instead, it must be weighed against other considerations, including the accused's Sixth Amendment right to a fair trial. As we cautioned in *KUTV Inc. v. Conder*,[10] "There can be no doubt that pretrial or

---

4. *See Kearns–Tribune Corp. v. Lewis*, 685 P.2d 515, 520 (Utah 1984); *see also Society of Prof. Journalists v. Bullock*, 743 P.2d 1166, 1177 (Utah 1987) (recognizing constitutional right of access to criminal pretrial competency hearing). In *Press Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press Enterprise II*), the United States Supreme Court also recognized the public's right to attend criminal preliminary hearings.

5. Before proceeding, we note that even though the preliminary hearing has been concluded, this appeal is not moot because it "involves a question of considerable public interest that will recur and yet will evade review" unless addressed. *Kearns–Tribune*, 685 P.2d at 518.

6. *Press-Enterprise II*, 478 U.S. at 13, 106 S.Ct. at 2742.

7. *Id.* at 9, 106 S.Ct. at 2740.

8. *Id.* at 8, 106 S.Ct. at 2740 (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605–06, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982)); *see In re Search Warrant for Secretarial Area— Gunn*, 855 F.2d 569, 573 (8th Cir.1988); *Greenwood v. Wolchik*, 149 Vt. 441, 544 A.2d 1156, 1158 (1988).

9. *Press-Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2740; *see Kearns–Tribune*, 685 P.2d at 522.

10. 668 P.2d 513 (Utah 1983).

during-trial publicity that comes to the attention of prospective or sitting jurors can deprive a criminal defendant of a fair trial."[11]

In *Press Enterprise II*, the United States Supreme Court articulated the factors to consider when weighing the right of access against the right to a fair trial:

> If the interest asserted is the right of the accused to a fair trial, the preliminary hearing [or documents associated therewith] shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.[12]

■ In the instant case, we must determine whether the pretrial documents filed in connection with the preliminary hearing meet the criteria set out above. The trial court found that no qualified right of public access exists under the First Amendment. We do not agree. Pretrial documents such as affidavits in support of search warrants, probable cause statements, and witness subpoenas are generally open for public inspection upon filing and return. "[A]lthough the process of issuing search warrants has traditionally not been conducted in an open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal."[13] Moreover, in *Redding v. Jacobsen*,[14] we recognized " 'a general

right to inspect and copy public records and documents' " under the common law.[15] Thus, the general practice in Utah and the common law both reveal that there is a tradition of accessibility to such documents.

We next decide whether permitting access to the documents plays a significant role in the function of the process in question—in this case, the preliminary hearing. We conclude that it does. As was stated in *Kearns–Tribune*, in which we found a constitutional right of access to preliminary hearings:

> If [the people] are to exercise their sovereign power in an intelligent and responsible manner, [they] must have free speech and a free press and access to operations of government. "Democracy blooms where the public is informed and stagnates where secrecy prevails."[16]

Closure of " 'significant pretrial proceedings' " such as preliminary hearings " 'perpetuates general ignorance and cuts off public knowledge necessary to a full understanding of the criminal justice system.' "[17]

We see no reason to distinguish generally between access to a preliminary hearing and the documents filed in relation to that hearing.[18] As one scholar noted, "Access to pretrial documents furthers the same societal needs served by open trials and pretrial civil and criminal proceedings.... The availability of documents means that graft and ignorance will be more difficult to conceal."[19] Disclosing documents used by courts in reaching a decision in a prelim-

**11.** *Id.* at 518; *see also Kearns–Tribune*, 685 P.2d at 522 (court can restrict or deny access altogether when necessary to assure that defendant receives a fair trial).

**12.** *Press-Enterprise II*, 478 U.S. at 14, 106 S.Ct. at 2743 (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) (*Press-Enterprise I*)).

**13.** *In re Search Warrant—Gunn*, 855 F.2d at 573.

**14.** 638 P.2d 503 (Utah 1981).

**15.** *Id.* at 507 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978)); *see also Associated Press v. United States Dist. Court for the Central*

*Dist. of Cal.*, 705 F.2d 1143, 1145 (9th Cir.1983); *Cowles Publishing Co. v. Murphy*, 96 Wash.2d 584, 637 P.2d 966, 969 (1981).

**16.** *Kearns–Tribune*, 685 P.2d at 521 (quoting *Phoenix Newspapers Inc. v. Jennings*, 107 Ariz. 557, 490 P.2d 563, 567 (1971)).

**17.** *Id.* (quoting *State v. Williams*, 93 N.J. 39, 459 A.2d 641, 649 (1983)); *see also Bullock*, 743 P.2d at 1177 (quoting with approval the same language from *Williams*).

**18.** *See Associated Press*, 705 F.2d at 1145.

**19.** Anne Elizabeth Cohen, *Access to Pretrial Documents Under the First Amendment*, 84 Colum.L.Rev. 1813, 1827 (1984).

inary hearing will discourage decisions based on improper means and will promote conscientious performance by all officials involved in the criminal justice system. Therefore, providing a presumptive right of access to documents filed in connection with preliminary hearings can play a significant positive role in the functioning of that process.

■ Thus, contrary to the determination of the trial court, we conclude that there is a First Amendment presumptive right of access to documents filed in connection with a criminal preliminary hearing.[20] We must now determine if, in this case, exercise of that right would unduly burden defendants' right to a trial free from prejudice due to that access.

■ Here, the trial court noted that the documents sought contained sensitive and inflammatory information that was not necessarily accurate or admissible.[21] It found that publication of the documents would jeopardize defendants' chance of receiving a fair trial. We think that the trial court's ruling is correct. The sensitive and sensational nature of the information contained in the documents goes beyond information that the public would receive by attending the preliminary hearing. The trial court was correct in barring access to such material to protect defendants' fair trial rights in this highly publicized and gruesome case.

■ Because the trial court determined that no presumptive right of access to the documents existed, its findings as to the availability of reasonable alternatives to sealing the documents are lacking. However, "when a trial court's findings and conclusions are less than crystal clear, we may 'search [the record] for grounds upon which they may be upheld.' " [22] The record and the court's findings reveal that the documents contain inadmissible and possibly inaccurate information, publication of which would not serve defendants' interests in receiving a fair trial. Given the documents' inflammatory and speculative nature, we believe that a substantial probability exists that alternatives to closure would not have adequately protected defendants' right to a fair trial. The trial court's decision to bar access to the documents is therefore affirmed.

### B. Utah Constitution

The Press claims that article I, section 15 of the Utah Constitution provides a right of access to the documents in question.[23] The Press argues that because of the prohibition against "restrain[ing]" freedom of the press, that constitutional provision grants greater protection than does the First Amendment.[24]

■ This court has recognized a presumptive right under article I, section 15 to

---

**20.** The State argues that recognizing a presumptive right to obtain such documents will open the floodgates of access to all documents that are protected pursuant to statute and will also result in increased evidentiary hearings and interlocutory appeals. We stress, however, that the Press seeks, and our ruling specifically is limited to, documents filed in relation to a criminal preliminary hearing.

**21.** For example, the probable cause statements supporting the arrests of both defendants and the affidavits supporting search warrants for Archuleta's person and defendants' apartment contained information concerning sodomy, physical torture to the victim's testicles with battery cables, and anal penetration with a tire iron. Defendants' statements, upon which the documents were based, were conflicting and contradictory, with each defendant describing himself solely as an unwilling bystander to the crime.

**22.** *State v. Archuleta,* 850 P.2d 1232, 1240 n. 18 (Utah 1993) (quoting *Allen v. Prudential Property Casualty Ins. Co.,* 839 P.2d 798, 800 (Utah 1992) (brackets in original)); *State v. Thurman,* 846 P.2d 1256, 1273 (Utah 1993). This conclusion is not contrary to *Kearns–Tribune* and *Bullock,* where we remanded because no findings whatsoever were made in support of closure. In this case, the trial court made extensive findings that we may reasonably augment with the record without remanding.

**23.** Article I, section 15 reads in pertinent part, "No law shall be passed to abridge or restrain the freedom of speech or of the press."

**24.** The State asserts that the Press waived its claim to a separate right of access under the Utah Constitution because it failed to raise the issue below. The record reveals that the Press did raise an argument under article I, section 15 in a memorandum filed in the district court, and it further cited directly to the "realistic

access "significant pretrial proceedings" such as criminal preliminary hearings [25] and pretrial competency hearings.[26] That right has never been absolute, however. Whether an independent and alternative state constitutional right of access exists depends "upon the nature and purpose of the proceeding in issue." [27] Such significant pretrial proceedings may be closed when access poses " ' "a realistic likelihood of prejudice" ' " to an accused's right to a fair trial." [28]

■■■ Documents associated with a preliminary hearing, which this court has determined to be "significant," warrant a presumptive right of access under article I, section 15. However, in this case, we do not believe that the trial court was incorrect in determining that publishing the documents would present a realistic likelihood of prejudice to defendants' fair trial rights. The trial court heard extensive testimony concerning the horrific circumstances of this case and the potential for prejudice if the information contained in the pretrial documents was disseminated publicly. Based on the specific facts of this case, we cannot say that the trial court's decision barring access was incorrect.

### C. Common Law Right of Access to Pretrial Documents

■■■ The Press also asserts that it has a common law right of access to documents filed in connection with the preliminary hearing and that the trial court was incorrect when it determined otherwise. We agree that a general right to inspect and copy judicial documents does exist but hold that the privilege is outweighed in this case by defendants' right to receive a trial free from potentially prejudicial publicity.

In *Nixon v. Warner Communications, Inc.*,[29] the United States Supreme Court stated, "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." [30] This court reiterated this general right in *Redding v. Jacobsen*, [31] a civil case, and the United States Court of Appeals for the Tenth Circuit explicitly acknowledged a similar right in a criminal case.[32]

■■■ This court has not heretofore considered whether a common law right to access documents exists in a criminal case. Consequently, we look to other jurisdictions for guidance. Although a general common law right of access exists, like the First Amendment right, it is not absolute.[33] Under the common law, "a court, in its discretion, may seal documents 'if the public's right of access is outweighed by com-

---

likelihood of prejudice" test enunciated in *Kearns–Tribune.* Although the Press did not argue extensively below that a separate standard exists under article I, section 15, we believe that the trial court had sufficient opportunity to review the issue and rule accordingly.

**25.** *Kearns–Tribune,* 685 P.2d at 520–22.

**26.** *Bullock,* 743 P.2d at 1177–78.

**27.** *Bullock,* 743 P.2d at 1177 (citing *Kearns–Tribune,* 685 P.2d at 518–22).

**28.** *Id.* (quoting *Kearns–Tribune,* 685 P.2d at 523) (in turn quoting *Williams,* 459 A.2d at 656)).

**29.** 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

**30.** *Id.* at 597, 98 S.Ct. at 1311 (citations omitted).

**31.** 638 P.2d at 507 (citing *Nixon,* 435 U.S. at 597, 98 S.Ct. at 1311). Other states also recognize a common law right to copy and inspect judicial documents in criminal cases. *See, e.g., Greenwood v. Wolchik,* 544 A.2d at 1157; *Cowles Publishing Co. v. Murphy,* 637 P.2d at 969.

**32.** *United States v. Hickey,* 767 F.2d 705, 708 (10th Cir.1985) (concerning a sealed plea bargain), *cert. denied sub nom., Hopkinson v. United States,* 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985). In *Huntsman–Christensen Corp. v. Entrada Industries, Inc.,* 639 F.Supp. 733, 735 (D.Utah 1986), the United States District Court for the District of Utah also recognized the general common law right of access to judicial records filed in a civil setting.

**33.** *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312; *Huntsman–Christensen Corp.,* 639 F.Supp. at 736; *Redding,* 638 P.2d at 507; *Cowles,* 637 P.2d at 969.

peting interests.' " [34] Competing interests include protecting the integrity of ongoing investigations and proceedings,[35] the privacy of those involved,[36] and the defendant's right to a fair trial.[37] Under the common law, the judge has discretion to weigh the competing interests in light of the particular facts and circumstances of the case.[38]

■ Here, the trial court determined that no common law right of access exists at all and that even if one does exist, it is "outweighed by the compelling interests of the defendant's right to a fair trial." We reverse the trial court's decision that there is no common law right of access to the documents. However, the trial court's ultimate conclusion barring access is supported by the presence of competing interests, including the prosecution's concern for the ongoing criminal investigation and testimony concerning a realistic likelihood of prejudice to defendants' fair trial rights due to pretrial publicity. We therefore affirm the trial court's order maintaining the seal on the documents associated with the preliminary hearing.

## III. EXHIBITS ADMITTED INTO EVIDENCE AT THE PRELIMINARY HEARING

■ The Press claims that the trial court erred in concluding that the public has no right to inspect and copy the actual exhibits admitted into evidence at the preliminary hearing.[39] The Press asserts a broad right to inspect and copy all such exhibits, including the autopsy report, photographs of the victim's body prepared by the medical examiner, fluid, tissue, and hair

samples and bone fragments taken from the victim, various instruments used to torture and kill the victim, defendants' and the victim's bloody clothing, and fingerprints taken at the crime scene.

The trial court concluded that no constitutional or common law right existed to inspect and copy tangible items of evidence admitted at a preliminary hearing. At one of the several hearings on this matter, the trial court noted that the public traditionally has been prohibited from inspecting exhibits admitted in an ongoing proceeding and that "the media has never been admitted beyond the bar" to view tangible evidence. Again, the Press asserts a right to access based on the United States and Utah Constitutions and the common law.

### A. First Amendment to the United States Constitution

■ When evaluating the Press's claim under the First Amendment, we again begin with a determination of whether a qualified right of access to copy and inspect the desired information exists. We agree with the trial court's statement that there is no history of the public's being "admitted beyond the bar" to physically handle and copy exhibits, especially at a preliminary hearing. Nor do we believe that granting such a right would play a significant positive role in the functioning of the process. The right asserted by the Press is that of the public at large.[40] Permitting the public to parade into a courtroom to inspect murder weapons, bloody clothing, or other items of evidence that

**34.** *Hickey,* 767 F.2d at 708 (quoting *In re Knight Publishing Co.,* 743 F.2d 231, 235 (4th Cir.1984)).

**35.** *See Seattle Times Co. v. Eberharter,* 105 Wash.2d 144, 713 P.2d 710, 712 (1986); *Cowles,* 637 P.2d at 969.

**36.** *See, e.g., Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312; *Redding,* 638 P.2d at 510.

**37.** *See United States v. Webbe,* 791 F.2d 103, 106 (8th Cir.1986); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 431 n. 18 (5th Cir.1981).

**38.** *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312; *Hickey,* 767 F.2d at 708; *Cowles,* 637 P.2d at 970.

**39.** The State claims that the Press waived its right to raise this issue on appeal because it was never briefed before the trial court. Although that much is true, the record also reveals that the trial court heard oral argument on this issue during one of the hearings on the closure order and also specifically included the exhibits in its findings of fact and conclusions of law on which this appeal is based. The issue was therefore before the trial court and is properly preserved for appeal.

**40.** *See Kearns–Tribune,* 685 P.2d at 521–22.

will conceivably be used at a subsequent trial would severely disrupt the efficient performance of justice and create obvious problems concerning the court's and the State's mandate to adequately preserve the integrity of the evidence.

Therefore, we hold that the First Amendment provides no presumptive right of public access to exhibits used at a preliminary hearing.[41] Consequently, we need not determine whether adequate findings were made concerning potential prejudice or the availability of alternatives to closure.

### B.  Utah Constitution

■■■ The Press also claims a right to inspect and copy the preliminary hearing exhibits under article I, section 15 of the Utah Constitution.  The Press is certainly entitled to attend preliminary hearings in appropriate circumstances and to report all that occurs there.  However, allowing blanket inspection of exhibits that must be preserved for a later trial if the defendant is bound over to the district court will hinder, not further, the interests of the criminal process.[42]  Hence, we hold that no presumptive right of access exists under the Utah Constitution.

### C.  Common Law

■■■ Finally, the Press enlists the common law to aid its attempt to inspect and copy the exhibits.  Courts generally recognize a common law qualified right to copy trial exhibits.[43]  Again, that right is not absolute, but instead lies within the sound discretion of the trial court to be exercised in light of the relevant facts and circumstances of the particular case.[44]

" 'When the concern is the efficient administration of justice and the provision to defendants of fair trials, the consideration of competing values is one heavily reliant on the observations and insights of the presiding judge.' " [45]   Providing public access to the exhibits requested would not serve the administration of justice and, as the trial court concluded, could very well jeopardize defendants' right to a fair trial. We therefore find no abuse of discretion and affirm the trial court's conclusion barring access under the common law.

We have duly considered the parties' remaining claims and find them to be without merit.  To summarize, we reverse the opinion of the trial court concluding that no presumptive right exists under the First Amendment, article I, section 15 of the Utah Constitution, or the common law to access documents filed in connection with an open preliminary hearing, but affirm the trial court's ultimate decision barring access in this particular case.  We also affirm the court's conclusion that no right exists for the public to physically inspect tangible items of evidence admitted at a preliminary hearing unless the court, in its discretion, deems it appropriate to allow inspection.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

**41.**  See United States v. Beckham, 789 F.2d 401, 408–09 (6th Cir.1986) (no constitutional right to copy audio and video tapes admitted at criminal trial); Webbe, 791 F.2d at 105–06 (no First Amendment right to copy audio tapes admitted into evidence in criminal trial); Belo Broadcasting, 654 F.2d at 428 ("[T]he press enjoys no constitutional right of physical access to courtroom exhibits...."); see also Nixon, 435 U.S. at 608–09, 98 S.Ct. at 1317 (rejecting claim that First Amendment provides right of access to copy audio tapes in criminal trial).

**42.**  See Bullock, 743 P.2d at 1177–78.

**43.**  See Nixon, 435 U.S. at 607–08, 98 S.Ct. at 1317; Beckham, 789 F.2d at 409–11; Webbe, 791 F.2d at 106; Belo Broadcasting, 654 F.2d at 429.

**44.**  Nixon, 435 U.S. at 599, 98 S.Ct. at 1313; Belo Broadcasting, 654 F.2d at 430.

**45.**  Webbe, 791 F.2d at 106 (quoting Belo Broadcasting, 654 F.2d at 431 n. 18) (both finding that trial court did not abuse its discretion in denying access to audio tapes admitted at criminal trials).