490 P.2d 563

**PHOENIX NEWSPAPERS INCORPORATED, Petitioner,**

v.

**Honorable Renz D. JENNINGS, Justice of the Peace, East Phoenix Precinct #1, Maricopa County, et al., Respondents.**

**No. 10638.**

Supreme Court of Arizona,
In Banc.

Nov. 19, 1971.

Rehearing Denied Dec. 14, 1971.

Gust, Rosenfeld & Divelbess by James F. Henderson, Phoenix, for petitioner.

Snell & Wilmer by Mark Wilmer and Stephen W. Craig, Phoenix, for amici curiae KTAR Broadcasting Co., KOOL Radio-Television, Inc.

Ross P. Lee, Public Defender by Bedford Douglass, Jr., Phoenix, for respondent John Gilbert Freeman.

Moise Berger, Maricopa County Atty. by John Trombino, Phoenix, for respondent County Attorney.

STRUCKMEYER, Chief Justice.

This special action was brought by Phoenix Newspapers, Incorporated against the Honorable Renz D. Jennings, Justice of the Peace, East Phoenix Precinct #1, Maricopa County, Arizona, Moise Berger, Maricopa County Attorney, and John Gilbert Freeman, to prohibit the enforcement of an order excluding petitioner's reporters and the public from Freeman's preliminary hearing on seven counts of murder. Moise Berger, Maricopa County Attorney, in agreement with Phoenix Newspapers, Incorporated, has responded urging that the exclusionary order was void as in excess of the justice court jurisdiction.

On October 12, 1971, Freeman, at the time duly set for his preliminary hearing before Renz D. Jennings to answer to the charge of murder, moved to exclude all witnesses and spectators, including the press, from the courtroom during the hearing. Freeman's motion was based principally upon the ground that the press and other news media have "seen fit to give from the outset a tremendous amount of publicity and much of the publicity is extremely prejudicial." Respondent Renz D.

Jennings, on the 13th of October, entered this order:

"IT IS HEREBY ORDERED AND DECREED that no persons other than the Court Reporter, personnel from the offices of the County Attorney and Public Defender and necessary personnel assigned thereto, and security forces assigned to the defendant shall be granted entrance to the courtroom during the preliminary examination of John G. Freeman."

Freeman's position here is that the failure to conduct a closed preliminary examination will result in continued reporting which would endanger his right to a fair trial by an impartial jury. Petitioner urges that, while admittedly this was a sensational crime, there is no indication of a clear and present danger to the administration of justice sufficient to justify such a broad exclusionary order.

While extensive arguments have been made, addressed to the First Amendment of the Constitution of the United States, we think that the provisions of Article II of the Arizona Constitution are sufficient to resolve the litigation. Article II, § 6, provides: "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right" and Article II, § 11, provides: "Justice in all cases shall be administered openly, and without unnecessary delay." The plain language of these constitutional enactments would not require construction were there not, as here, a claim of a direct confrontation with the equally important constitutional right to a fair trial by an impartial jury. Some assistance to a resolution of this problem can be found in an examination of the law of this jurisdiction as it existed prior to the order of Renz D. Jennings.

In Phoenix Newspapers, Inc. v. Superior Court, 101 Ariz. 257, 418 P.2d 594 (1966), a newspaper reporter was present at a hearing on an application for a writ of habeas corpus in the Superior Court. The court entered an order enjoining all persons from disclosing what had transpired during the course of the hearing. On an application for a writ of prohibition, we held that "[t]he restraint imposed by the trial court * * * strikes at the very foundation of freedom of the press by subjecting it to censorship by the judiciary." And compare Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546, where the Supreme Court of the United States said, "Those who see and hear what transpired can report it with impunity."

■ While it has been recognized that a magistrate has the inherent power to secure the integrity of the judicial processes by ordering a closed hearing, Schavey v. Roylston, 8 Ariz.App. 574, 448 P.2d 418, it is settled in Arizona that a defendant has no right to a secret trial and an accused, by request may not foreclose the right of the people from freely discussing and printing the proceedings held in open court at a trial, State v. White, 97 Ariz. 196, 398 P.2d 903 (1965).

The right of the public and press to attend at will various judicial proceedings has evoked a wide divergence of views in judicial holdings. It has been held in New York, contrary to Arizona, that freedom of the press is not abridged by an exclusionary order denying to the public, including newspapermen, the opportunity to see and hear what transpires at a trial in a criminal case, because the right asserted is not embraced within the First Amendment to the United States Constitution, Article I, or the New York Constitution, Article I, § 8, United Press Associations v. Valente, 308 N.Y. 71, 123 N.E.2d 777 (1954). But it has been held, consistent with this state's pronouncements, that a crime is a public wrong in which the community is deeply interested in the right to observe the administration of justice so that a defendant cannot waive the right of the people to have a trial open to the public view, E. W. Scripps Co. v. Fulton, 100 Ohio App. 157, 125 N.E.2d 896 (1955). And see both the principal and dissenting opinions in Hamil-

**560**

ton v. Municipal Court, 270 Cal.App.2d 797, 76 Cal.Rptr. 168, 33 A.L.R.3d 1029 (1969).

■ The differences in the published decisions concerning the right to a closed trial cannot be wholly squared by drawing distinctions from the facts or state constitutional provisions. But between the right to exclude the public at will in proceedings preliminary to the trial and the right of the public to be present at all judicial proceedings, there is a criterion which can be applied to test the propriety of a closed hearing. We think the Supreme Court of the United States has indicated where the line shall be drawn. If circumstances exist which establish a clear and present danger that the judicial process will be subverted by an open hearing, appropriate action should be taken by a court to preserve judicial integrity. See Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430; and Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192, 159 A.L.R. 1346. Clear and present danger means that the substantive evil must be extremely serious and the degree of imminence extremely high, Bridges, supra.

The evil which the Justice of the Peace, Renz D. Jennings, sought to prevent is the denial of fair trial by harmful and prejudicial pretrial publicity. Admittedly, the homicide of seven persons is an incident arousing tremendous public interest, and one upon which the spotlight of publicity will inevitably turn. To establish harmful and prejudicial publicity, Freeman submitted copies of seventeen newspaper articles taken from petitioner's newspapers. It was reported that he had had been accused of child molesting in Los Angeles, California. Some stories centered around interviews with relatives and others expressing their views as to various facets of the case. There was newspaper coverage of the funerals of the seven people who were victims of the homicides and there were also summaries of what the press believed to be the evidence in the case, and inferences and conclusions suggested by the supposed evidence. From the news coverage given to the case, it is to be acknowledged that much of what was published would tend to set public opinion against Freeman.

■ We do not, however, think that this justifies the exclusionary order.

Standard 3.1 of the Standards Relating to Fair Trial and Free Press, approved by the House of Delegates of the American Bar Association February 1968, recommends the exclusion of the public from preliminary or other pretrial hearings in a criminal case where the dissemination of evidence or arguments at the hearing may disclose matters which will be inadmissible in evidence at the trial and is, therefore, likely to interfere with the right to a fair trial by an impartial jury.

This is not Freeman's position. He does not suggest that evidence inadmissible at the trial will be introduced at the preliminary hearing. He relies only on the prominence of the publicity previously given by the news media. Consequently, if it be assumed that the publicity attendant upon the preliminary hearing will be great and even persuasive as to Freeman's guilt, still, if the evidence at the hearing is confined to relevant facts admissible at a trial, there can be no essential unfairness because the same evidence will be used by a jury at the trial to judge the criminality of his conduct. In this respect there can be no prejudicial pretrial publicity.

■ If, because of the continued dissemination of the harmful news articles to which Freeman points, and, of course, similar coverage by the other news media, there is a reasonable likelihood that a fair trial cannot be had, Freeman's remedy is for a continuance or a change of venue, Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, and see Standard 3.2 of the Standards Relating to Free Trial and Free Press. In Sheppard v. Maxwell, the Court said, " * * * where there was 'no threat or menace to the integrity of the trial' * * * we have consistently required that the press have a free hand,

even though we sometimes deplored its sensationalism." We are of the opinion that the disclosure of relevant evidentiary facts by which the public may form an opinion as to the guilt or innocence of a defendant does not pose a clear and present threat to a fair trial sufficient to support an order excluding the public from a preliminary hearing.

Article II, § 11 of the Arizona Constitution requiring that justice be administered openly is in part for the benefit of an accused in a criminal case, but it does not guarantee him a private hearing or trial as against the public whose interests are deeply involved in the administration of the law. Democracy blooms where the public is informed and stagnates where secrecy prevails. Only in a case where there is a clear, present threat to the due administration of justice or one which appeals primarily to the morbid and prurient should the right of the public to observe a court proceeding be denied. Such has not been shown here.

Freeman, in his motion before Judge Jennings, advanced two additional grounds for the exclusion of the public from the preliminary hearing. Neither has been urged in this Court. We deem that such grounds have been abandoned and need no further comment.

One further point should be briefly considered. Respondent urges that petitioner has no standing or right to interfere with a criminal action in which it is not a party. However, we think the constitutional right here sought to be enforced is of such significance that any member of the public has a standing to question his exclusion from a judicial hearing.

"A citizen who is refused admission to a courtroom is denied the exact same kind of right as one turned away from a public park or schoolroom." Desmond, concurring in United Press Associations v. Valente, supra, 123 N.E.2d at 784.

A writ of prohibition is appropriate to prevent an inferior court from acting without or in excess of jurisdiction, Phoe-nix Newspapers, Inc. v. Superior Court, supra, 101 Ariz. 257, 418 P.2d 594. Similarly, the Ohio Court concluded:

"* * * if there be a public right to observe a trial in courts of justice, the only way such right can be adjudicated would be by seeking, in an action for declaratory judgment, an order declaring the plaintiff's rights, or by seeking a writ of prohibition where the order as to the public attendance at the trial exceeds the jurisdiction of the court." E. W. Scripps v. Fulton, supra, 125 N.E.2d at 899.

Members of the news media, as members of the public, have the necessary standing to judicially question the order here under attack.

It is ordered that the permanent writ issue prohibiting the enforcement of the exclusionary order entered by the East Phoenix Justice Court on the thirteenth day of October 1971.

HAYS, V. C. J., and UDALL, LOCKWOOD and CAMERON, JJ., concur.