**KEARNS–TRIBUNE CORPORATION, PUBLISHER OF the SALT LAKE TRIBUNE, Petitioner,**

v.

**Honorable Eleanor S. LEWIS, Circuit Court Judge, Respondent.**

**No. 19612.**

Supreme Court of Utah.

May 1, 1984.

D. Miles Holman, Salt Lake City for petitioner.

David L. Wilkinson, Atty. Gen., Ted Cannon, County Atty., Carvel Harward, Brooke Wells, Connie Mower and Suzan Pixton, Salt Lake City, for respondent.

OAKS, Justice.

This case concerns the circumstances under which a judge can exclude the public and the press from the preliminary hearing in a criminal case.

## I. FACTS AND CHALLENGED ORDER

Three defendants were charged with aggravated kidnapping, aggravated sexual assault, and aggravated exploitation of prostitution against two females, one age 17. The defense and the prosecution joined in a motion to close the preliminary hearing to the public. Respondent Lewis, a judge of the circuit court, held a hearing on that motion on November 23, 1983, the day scheduled for the preliminary hearing. Petitioner, the publisher of a daily newspaper, had been notified of the hearing and was represented there by counsel.

The proponents of closure relied on Utah Code of Criminal Procedure, Rule 7(d)(2), U.C.A., 1953, § 77–35–7(d)(2), which provides that on the request of either party at a preliminary examination "the magistrate may order all spectators to be excluded from the courtroom." The prosecution and the defense urged closure to assure that defendants could have a fair trial before a jury whose impartiality had not been jeopardized by pretrial publicity in a "high profile" case. The prosecutor also referred in passing to an interest "in the privacy and the well being of the victims." In opposing closure, petitioner relied on the press's constitutional rights, as "the surrogate of the public," to "be present and observe the workings of the judicial branch of the government." While conceding that such hearings could be closed "as a last resort," petitioner maintained that this could only be done where the circumstances met a three-pronged test, mentioned below (Part IVA). No evidence was proffered or received at the hearing. There were no representations that any evidence to be presented at the preliminary hearing would be subject to a motion to suppress or would otherwise be inadmissible at trial.

At the conclusion of arguments on the motion, the court stated that she would not close the courtroom if this were a trial, but this was only a preliminary hearing. The court then concluded: "The nature of the offense, as well as balancing the interest of the victims and the defendants, who are merely charged at this juncture, persuades this Court that this courtroom should be closed, and that will be the order of the Court." No other findings or conclusions were indicated at this time. The court then denied petitioner's motion to stay the preliminary hearing while it appealed the order of closure. The judge cleared the courtroom and went forward with the preliminary hearing. The 17-year-old victim testified. At the conclusion of the hearing, the defendants were bound over to the district court.

Petitioner immediately came to this Court with a complaint and petition for an extraordinary writ, seeking to vacate the order of closure and to stay the preliminary hearing pending decision. We denied the stay on November 23, but called for briefs on the merits, together with the record (including the findings of the court). The circuit court signed formal findings of fact on December 5, but through "clerical oversight" they were not filed of record until January 20, 1984, two weeks after petitioner's brief was filed.

## II. MOOTNESS AND STANDING

■ Even though the preliminary hearing has been concluded, this appeal is not moot for the reasons stated in *KUTV, Inc. v. Conder*, Utah, 668 P.2d 513, 516–17 (1983). This case involves a question of considerable public interest that will recur and yet will evade review unless we apply an exception to the mootness doctrine. In addition, petitioner clearly has standing to contest the closure. *Id.* at 517.

## III. THE CONSTITUTIONAL RIGHT OF ACCESS

While it is settled that the public has a right of access to criminal *trials, id.* at 517; *KUTV, Inc. v. Conder*, Utah, 635 P.2d 412 (1981), we have not clarified whether a *preliminary hearing* can be closed, and if so, what rules and procedures govern the closure.

The threshold question is whether either the federal or the state constitution gives the public (including the media) any constitutional right to attend a preliminary hearing, subject of course to appropriate exceptions. Petitioner asserts such a constitutional right. Respondent denies it, contending that the right to attend a preliminary hearing is subject to limitation by the Legislature without constitutional restraint. In this instance, the Legislature, acting through Rule 7(d)(2), has committed that decision to the discretion of the magistrate.

### A. United States Constitution

The United States Supreme Court has now recognized that the First Amendment to the United States Constitution gives the public, including the media, a right of access to a criminal *trial*, subject only to narrowly tailored exceptions tied to a compelling state interest. *Press-Enterprise Co. v. Superior Court*, —— U.S. ——, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). The principal reason for finding this right in the First Amendment is to promote an informed discussion of government affairs, including those conducted in the courts.

Underlying the First Amendment right of access to criminal trials is the common understanding that "a major purpose of that Amendment was to protect the free discussion of governmental affairs," *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966). By offering such protection, the First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government.... Thus to the extent that the First Amendment embraces a right of access to criminal trials, it is to ensure that this constitutionally protected "discussion of governmental affairs" is an informed one.

*Globe Newspaper Co. v. Superior Court*, 457 U.S. at 604–05, 102 S.Ct. at 2619. Another reason cited for the First Amendment right of access is to ensure the fairness of the criminal trial.

The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Press-Enterprise Co. v. Superior Court*, —— U.S. at ——, 104 S.Ct. at 823.

The consequence of recognizing the First Amendment right of access to criminal trials is explained in the Supreme Court's most recent decision:

Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness.... *The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve*

*higher values and is narrowly tailored to serve that interest.* The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.,* —— U.S. at ——, 104 S.Ct. at 824 (emphasis added).

The question before us in this case is whether the rationale the Supreme Court gave in finding a First Amendment right of access to criminal *trials* applies to *preliminary hearings.* The Supreme Court has never resolved that question. The closest decision on its facts is *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), which held, by a 5–4 majority, that on the facts of that case there was no constitutional violation in excluding the public and the press from a pretrial *motion to suppress.* The Court held, first, that the Sixth Amendment gave no constitutional right of access to the public. Second, even if the First Amendment gave a right of access it was "outweighed" by the defendant's right to a fair trial in that case, since there was a "reasonable probability of prejudice" if the transcript of a hearing whose purpose was to screen out unreliable or illegally obtained evidence was made public in advance of the trial. *Id.* at 392–93, 99 S.Ct. at 2911–12.

There are a host of appellate court decisions applying the principles of the foregoing cases to a variety of different pretrial hearings, including those involving suppression or admissibility of evidence, voir dire of potential jurors, fixing of bail, and determinations of probable cause (preliminary hearings).[1] Because we believe the issue should turn on the precise nature of the proceeding in question, we limit our review to cases involving preliminary hearings.

In the period since *Richmond Newspapers* and *Globe Newspaper,* three state appellate courts have decided that the new First Amendment right of public access applies to preliminary hearings. All held that the public and the media cannot be excluded from a preliminary hearing without findings of fact on the circumstances that outweigh the constitutional right. *State v. Williams,* 93 N.J. 39, 459 A.2d 641 (1983); *Petition of Daily Item,* 310 Pa.Super.Ct. 222, 456 A.2d 580 (1983). A similar decision, which covers but is not limited to preliminary hearings, is *Minneapolis Star and Tribune Co. v. Kammeyer,* Minn., 341 N.W.2d 550 (1983). An earlier decision to the same effect is *Star Journal Publishing Corp. v. County Court,* 197 Colo. 234, 591 P.2d 1028 (1979).

The most complete discussion is by the New Jersey Supreme Court in *State v. Williams, supra,* which concluded that "the 'institutional value' of open criminal trials applies with equal force to criminal pretrial proceedings," including the preliminary hearing involved in that case. 459 A.2d at 648. While the preliminary hearing could be closed for cause (an exception discussed hereafter), this could only be done where the court disclosed on the record its findings of fact as to the basis for closure. *Id.* at 659. The other cited cases are to the same effect.

A decision to the contrary is *San Jose-Mercury News v. Municipal Court,* 30 Cal.3d 498, 638 P.2d 655, 179 Cal.Rptr. 772 (1982). This case sustained the constitutionality of a statute that requires the magistrate to close the preliminary hearing upon request of the defendant without any weighing of the public's countervailing right to access. *See also Press-Enterprise Co. v. Superior Court,* 150 Cal.App.3d 888, 198 Cal.Rptr. 241 (1984) (applies *San Jose-*

---

1. *See, e.g., United States v. Brooklier,* 685 F.2d 1162 (9th Cir.1982) (voir dire and motions to suppress and exclude evidence); *United States v. Criden,* 675 F.2d 550 (3d Cir.1982) (motions to suppress and dismiss); *United States v. Edwards,* D.C., 430 A.2d 1321 (1981) (pretrial de-

tention proceedings); *Miami Herald Publishing Co. v. Lewis,* Fla., 426 So.2d 1 (1982) (motion to suppress); *Minneapolis Star and Tribune Co. v. Kammeyer,* Minn., 341 N.W.2d 550 (1983) (motions to suppress and change venue).

*Mercury News* precedent in holding no constitutional right of public access).[2]

■ In *Redding v. Jacobsen*, Utah, 638 P.2d 503 (1981), we reviewed the *Richmond Newspapers* decision and referred to "the new First Amendment right of access that seems to be emerging...." *Id.* at 509. In *Globe Newspaper* and *Press-Enterprise*, decided thereafter, the United States Supreme court confirmed the existence of a First Amendment right of access to criminal trials. Like the New Jersey Supreme Court in *State v. Williams, supra,* we believe that the reasons supporting the right of access to criminal *trials* apply equally to *preliminary hearings* (although the exceptions that justify closure may occur more frequently with preliminary hearings than with trials). We therefore hold that the public's (including the media's) First Amendment right of access applies to preliminary hearings in criminal cases.

While our decision on the First Amendment is sufficient to dispose of this case, it is also appropriate for us to resolve the issue under the Utah Constitution as an independent and alternative ground. On that ground, our decision is final and unreviewable. *Michigan v. Long*, —— U.S. ——, 103 S.Ct. 3469, 3476, 77 L.Ed. 1201 (1983).

B. Utah Constitution

1. The Preliminary Hearing

We preface our discussion of whether the closure of preliminary hearings violates our state constitution with a review of the purpose of preliminary hearings under our Utah procedure.

■ A person arrested for a felony is brought before a magistrate, who informs him of the charge, informs him of his right to a preliminary examination, and fixes bail. § 77–35–7(a) and (c). Within a specified time thereafter, the arrested person has a right to a preliminary examination (unless he has been indicted). § 77–35–7(c). At that hearing, the prosecution has the burden of introducing sufficient evidence to persuade the magistrate that there is "probable cause to believe that the crime charged has been committed and that the defendant has committed it...." § 77–35–7(d)(1). In *State v. Anderson*, Utah, 612 P.2d 778, 783–84 (1980), we said:

> The fundamental purpose served by the preliminary examination is the ferreting out of groundless and improvident prosecutions. The effectuation of this primary purpose relieves the accused from the substantial degradation and expense incident to a modern criminal trial when the charges against him are unwarranted or the evidence insufficient.

We also noted the ancillary purposes of providing the defendant particulars on the nature of the State's case and a means to discover and preserve evidence favorable to his defense. *Id. Cf. State v. Easthope*, Utah, 668 P.2d 528 (1983) (power to compel discovery of evidence for use at preliminary hearing). In cases where a defendant ultimately pleads guilty to the charged offense or a lesser one, as reportedly occurred here, the preliminary hearing may provide the only occasion for a public hearing of the prosecution's evidence.

If the magistrate finds probable cause, the defendant is bound over to answer in the district court. If not, the information is dismissed, and the defendant is discharged without prejudice to the State's later instituting a subsequent prosecution for the same offense. § 77–35–7(d)(1).

In consideration of its vital functions, we have declared that "the preliminary hearing represents a critical stage in the criminal process [in Utah] and a part of the criminal prosecution." *State v. Anderson*, 612 P.2d at 782 n. 9. In addition, in the case just cited we held that the preliminary

---

2. The North Dakota Supreme Court's decision sustaining closure in *Dickinson Newspapers, Inc. v. Jorgensen*, N.D., 338 N.W.2d 72 (1983), is not contrary to the constitutional right of access. This case did not sustain the constitutionality of a closure statute, like *San Jose-Mercury News*. *Dickinson Newspapers* approved the application of a statute that permitted closure in the discretion of the magistrate where individual circumstances made closure necessary to assure a fair trial. The court found no abuse of discretion in the closure.

hearing is such an important part of the criminal prosecution that the right of confrontation guaranteed by Art. I, § 12 of the Utah Constitution imposes limits on the kinds of evidence the prosecution can use in that hearing. *Id.* at 782–83. In terms of *State v. Anderson*'s holding on the right of confrontation, the preliminary hearing is more like the trial, where there is such a right, than the grand jury proceeding, where the accused has no right of confrontation and cannot even be present in person or by counsel. Thus, the fact that the grand jury proceeding is traditionally closed provides no support for the argument that a preliminary hearing should also be closed. An accused who has the procedural safeguards afforded in the preliminary hearing has less need of closure to safeguard his rights.

Utah's preliminary hearing is different from the preliminary hearings in some other jurisdictions in that it does *not* include hearings on motions to suppress evidence.[3] Rule 7(d)(1) provides: "Objections to evidence on the ground that it was acquired by unlawful means are not properly raised at the preliminary examination." § 77–35–7(d)(1). As a result, the added risks of prejudice through pretrial disclosure of evidence targeted in a motion to suppress are not present in Utah's preliminary hearing. If the prosecution elected to try to use such evidence in the preliminary hearing (in advance of a ruling on whether it should be suppressed), the defendant could seek special measures to avoid its public disclosure, a matter not before us in this case. But the disclosures incident to resolution of a motion to suppress—often cited in arguments and rulings in favor of closing those hearings, *e.g., Gannett Co. v. DePasquale,* 443 U.S. at 378–79, 99 S.Ct. at 2904–05— are not inevitably involved in the preliminary hearing in Utah.

2. Utah Constitutional Right of Public Access to Criminal Trials and Proceedings

"The cornerstone of democratic government is the conviction that governments exist at the sufferance of the people ...." *In re J.P.,* Utah, 648 P.2d 1364, 1372 (1982). "All political power is inherent in the people; and all free governments are founded on their authority for their equal protection and benefit, and they have the right to alter or reform their government as the public welfare may require." Utah Const. art. I, § 2. That foundation principle of our state constitutional law is implemented in part by Article I, § 15: "No law shall be passed to abridge or restrain the freedom of speech or of the press." *See KUTV, Inc. v. Conder,* 668 P.2d at 518–21 (discusses history of provision). The freedoms of speech and press are fundamental to the effective exercise of the ultimate political power of the people.

If they are to exercise their sovereign power in an intelligent and responsible manner, the people must have free speech and a free press and access to operations of government. "Democracy blooms where the public is informed and stagnates where secrecy prevails." *Phoenix Newspapers Inc. v. Jennings,* 107 Ariz. 557, 561, 490 P.2d 563, 567 (1971). As the New Jersey Supreme Court observed in *State v. Williams, supra:* "In addition to kindling public misperception and eroding public confidence, closure of significant pretrial proceedings perpetuates general ignorance and cuts off public knowledge necessary to a full understanding of the criminal justice system." 93 N.J. at 54, 459 A.2d at 649.

The people are and should be deeply interested and involved in the administration of justice. Their interest and involvement in the operations of the judicial branch should be informed. We therefore hold that the people have a constitutional right of public access to criminal trials and preliminary hearings, subject to the exceptions outlined hereafter. While this holding recognizes no greater rights of access in the news media than in the public at large, we recognize the reality of petitioner's contention that the media often act as

---

3. *Compare, e.g.,* Ill.Code Crim.Proc. § 109–3(e),     Ill.Rev.Stat. ch. 38, § 109–3(e) (1980).

surrogates in asserting the public's constitutional right of access, as petitioner does in this case. We also recognize and honor the fact that the exercise of access by the news media, coupled with a responsible exercise of its high public trust, will result in far more general dissemination of information about judicial proceedings than the attendance of any other members of the public.

Our decision is supported by what we consider to be the better-reasoned state supreme court decisions on public access to preliminary hearings as a matter of right under state constitutions. In *State v. Williams, supra,* the New Jersey Supreme Court found that its constitutional provision on free press, which is phrased in substantially the same terms as Art. I, § 15 of the Utah Constitution, created a public right of access to a preliminary hearing, subject to exceptions where the court finds that pretrial publicity poses a "realistic likelihood of prejudice to a fair trial ...." 93 N.J. at 63, 459 A.2d at 654. In *Keene Publishing Corp. v. Keene District Court,* 117 N.H. 959, 380 A.2d 261 (1977), the New Hampshire Supreme Court held that its free press provision guaranteed that the press could not be excluded from a probable cause hearing without finding that a failure to close the hearing would pose a clear and present danger to a fair trial. And in *Phoenix Newspapers Inc. v. Jennings, supra,* the Arizona Supreme Court relied on its free press provision and a provision for justice to be administered openly in holding that a preliminary hearing must be open unless "circumstances exist which establish a clear and present

danger that the judicial process will be subverted by an open hearing ...." 490 P.2d at 566.[4]

Two states have held that their state constitutions pose no obstacle to statutes or rules directing or permitting the closure of preliminary hearings.[5] We find the reasoning of these opinions unpersuasive.

## IV. EXCEPTIONS TO CONSTITUTIONAL RIGHT OF ACCESS

■ As noted in the preceding discussion, all of the courts that have recognized a constitutional right of access to criminal proceedings have also held that the right is subject to exceptions. For example, the court can restrict or deny access altogether where necessary to assure that the defendant receives a fair trial before an impartial jury. This section will discuss the criteria and procedures to be followed in making that determination.

### A. Criteria

This case concerns the legality of closing a criminal proceeding to the public, not the legality of a prior restraint on publication. Consequently, the stringent three-pronged test applied by the Supreme Court on the legality of a prior restraint, *Nebraska Press Association v Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), and the four-pronged test applied by this Court on prior restraints limited to the duration of trial, *KUTV, Inc. v. Wilkinson,* 686 P.2d 456, (Utah, 1984), are inapplicable here.

4. Similarly, the Hawaii Supreme Court relied on a clear and compelling "policy of open and public administration of justice" to require public access to a preliminary hearing unless the trial court finds on the record that normally inadmissible evidence adduced at the hearing creates a substantial likelihood of prejudice to the defendant's right to a fair trial. However, the court did not rest its decision on constitutional principles. *Gannett Pacific Corp. v. Richardson,* 59 Hawaii 224, 580 P.2d 49, 55–57 (1978).

5. In *San Jose-Mercury News, supra,* the California Supreme Court rejected a challenge based

on the state constitution. And in *Azbill v. Fisher,* 84 Nev. 414, 442 P.2d 916 (1968), the Nevada Supreme Court held that its state constitutional provision, which (like New Jersey's) is phrased in substantially the same terms as Art. I, § 15 of the Utah Constitution, conferred no public right of access that prevented a magistrate from exercising statutory discretion to close a preliminary hearing.

Earlier cases are discussed in Annot., 49 A.L. R.3d 1007 (1973); Annot., 31 A.L.R.3d 816 (1970).

The burden that must be sustained to obtain closure of criminal proceedings should be less stringent than the burden required to impose a prior restraint. *Gannett Co. v. DePasquale*, 443 U.S. at 393 n. 25, 99 S.Ct. at 2912 n. 25 (opinion of Court) and 398–401, 99 S.Ct. at 2914–2916 (Powell, J., concurring). Thus, the United States Supreme Court has phrased the criteria for closure (notwithstanding the First Amendment right of access) in terms that are comparatively easy to satisfy: "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values [elsewhere identified as "the right of the accused to a fair trial," 104 S.Ct. at 823] and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, — U.S. ——, 104 S.Ct. at 824.

Interpreting the First Amendment and the comparable state constitutional guarantees, state courts have employed a variety of standards. Some courts have followed the A.B.A. standard, holding that in order to obtain closure in the face of the public right of access a defendant must show (1) that the public hearing presents a "clear and present danger" to his rights to a fair trial because there is a "substantial likelihood" that it would permit prejudicial information to reach potential jurors, and (2) that the prejudicial effect of such information on potential jurors cannot be avoided by any reasonable alternative means. *Star Journal Publishing Corp. v. County Court*, 197 Colo. 234, 591 P.2d 1028, 1030 (1979); *Keene Publishing Corp. v. Keene District Court*, 117 N.H. 959, 380 A.2d 261, 263 (1977); American Bar Association Standards for Criminal Justice Relating to Fair Trial and Free Press § 8–3.2 (2d ed. 1978).

■ On this element, we prefer the criteria phrased by the New Jersey Supreme Court in *State v. Williams, supra*, which does not adopt the "clear and present danger" test and simply makes reference to a "realistic likelihood of prejudice" as a result of adverse publicity traceable to the open hearing. 93 N.J. at 69, 459 A.2d at

656. Using its "special judicial expertise and experience," 93 N.J. at 67, 459 A.2d at 655, the court will decide upon the need for closure based upon the following showings:

(1) the evidence relevant to the nature and extent of the adverse publicity [that may be] generated by the open pretrial proceeding, including any inferences as to its potential for prejudice against a fair trial by an impartial jury, and

(2) the evidence relating to the [availability, feasibility, and efficacy of alternative] means of selecting jurors and conducting the trial to assure the integrity and impartiality of the jury.

93 N.J. at 69, 459 A.2d at 656–57. (The words in brackets are from alternative formulations of the rule, 93 N.J. at 63–67, 459 A.2d at 653–55.) While easier to satisfy than the stringent multipart test pertaining to prior restraints, these criteria still impose a significant burden on a party who seeks to obtain an exception to the people's right of access to the preliminary hearing in a criminal case.

B. Burden of Proof

■ The burden of proof and persuasion on the closure of a preliminary hearing is on the proponent of closure (defendant or prosecution). *State v. Williams*, 93 N.J. at 64, 459 A.2d at 654. This rule follows from the public's constitutional right of access to the preliminary hearing. It imposes the burden on the party or parties with best access to evidence or information that can be used to sustain the burden. Contrary to the position advocated in the concurring opinion, it would be unfair and unworkable to impose the burden on the members of the public, such as the media, who rely on the constitutional right of access to the preliminary hearing. If the media had the burden of proving that an open hearing would not deny the defendant a fair trial, this would either doom their efforts to automatic failure (by requiring proof without access to evidence) or necessitate cumbersome and controversial prehearing discovery of evidence to the media, which could well render the issue of closure moot before it is heard.

**524**

### C. Procedure and Findings

For the same reasons articulated in *KUTV, Inc. v. Conder,* 668 P.2d at 524–25, a closure order must be preceded by notice and hearing. Representative members of the media must receive notice of the motion for closure and, along with other interested parties who seek to participate, must be afforded an opportunity to participate in the proceedings upon the motion to the maximum extent possible. In order to prevent disclosure of the allegedly prejudicial material before the issue of closure can be resolved, the court should follow the procedure outlined below.

First, the hearing on the motion for closure should be open to the greatest extent possible. *Westchester Rockland Newspapers, Inc. v. Legget,* 48 N.Y.2d 430, 399 N.E.2d 518, 524–25, 434 N.Y.S.2d 630, 637–38 (1979). If an open hearing can be conducted without disclosing the content of the allegedly prejudicial material, this should be done. *State v. Burak,* 37 Conn. Sup. 627, 431 A.2d 1246 (1981).

Second, if disclosure of the allegedly prejudicial material is essential to the conduct of the hearing on the motion for closure, the court should first seek a voluntary agreement from the parties who wish to be present that they will not disclose the allegedly prejudicial information until it is disclosed at the trial or the trial has concluded. *See, e.g., State ex rel. Smith v. District Court,* Mont., 654 P.2d 982, 987–88 (1982); *Keene Publishing Corp. v. Keene District Court, supra.* Absent such an agreement, the court may close the courtroom in order to conduct in camera whatever proceedings cannot be conducted without disclosure of the allegedly prejudicial information. *State v. Williams,* 93 N.J. at 73, 459 A.2d at 658–59; *Richmond Newspapers, Inc. v. Commonwealth,* Va., 281 S.E.2d 915, 924 (1981).

Third, we stress that under either alternative the public can only be excluded from that portion of the closure hearing that the court finds to be necessary to protect the countervailing interests, such as the defendant's right to a fair trial. *United States v. Cianfrani,* 573 F.2d 835, 854 (3d Cir.1978).

Fourth, in the event that any portion of the proceeding is closed, the transcript of the proceeding should be made available to the public at the earliest time consistent with the preservation of the interests that required the hearing to be closed. *State v. Burak, supra,* 431 A.2d at 1248.

Fifth, an order of closure must be accompanied by suitable written findings. This requirement, which is imposed by virtually all of the authorities cited in this opinion, allows an affected party to subject the order to immediate review and gives the reviewing court an authentic statement of the facts and legal principles upon which the closure was based.

Under the foregoing procedure, the trial court will make an informed and fully explained decision on the necessity of closure, while considering and protecting the public's right of access to the fullest extent possible.

The closure order petitioner challenged in this case was not accompanied by written findings. Indeed, no evidence was submitted in the hearing on the defendants' motion for closure. Without written findings, adequately supported by evidence, a closure order fails to qualify for the fair-trial exception and is invalid under the constitutional right of access defined in this opinion.

The extraordinary writ sought by petitioner is granted, and respondent's November 23 order closing the preliminary hearing is set aside. No costs awarded.

HALL, C.J., and DURHAM, J., concur.

HOWE, J., concurs in the concurring and dissenting opinion of DANIELS, J.

STEWART, J., does not participate herein; DANIELS, District Judge, sat.

DANIELS, District Judge (Concurring and Dissenting).

I concur with the majority in granting the extraordinary writ on the basis that the magistrate made no written findings. I dissent from that portion of the opinion which sets forth the procedure to be followed in closing a preliminary hearing, as I believe the standard adopted is incorrect for preliminary hearings.

Initially, it is important to note that the right here asserted is not that of the accused. In this case, both the accused and the prosecutor asked to close the hearing. The accused was concerned about his right to a fair trial; the prosecutor expressed concern for the reputations of the victims. Whether the accused has an absolute right to demand an open preliminary hearing is a different question. The Sixth Amendment right to a public trial was intended to guard against "star chamber" abuses that may result from secret proceedings. But the news media have no standing to assert this right. As the Supreme Court said in *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979):

> In an adversary system of criminal justice, the public interest in the administration of justice is protected by the participants in the litigation. Thus, because of the great public interest in jury trials as the preferred mode of factfinding in criminal cases, a defendant cannot waive a jury trial without the consent of the prosecutor and judge. But if the defendant waives his right to a jury trial, and the prosecutor and the judge consent, it could hardly be seriously argued that a member of the public could demand a jury trial because of the societal interest in that mode of fact-finding. Similarly, while a defendant cannot convert his right to a speedy trial into a right to compel an indefinite postponement, a member of the general public surely has no right to prevent a continuance in order to vindicate the public interest in the efficient administration of justice. In short, our adversary system of criminal justice is premised upon the proposition that the public interest is fully protected by the participants in the litigation.

443 U.S. at 383–84, 99 S.Ct. at 2907–08 (citations and footnote omitted).

Here Kearns-Tribune is asserting an independent right based not upon the Sixth Amendment, but solely upon the free speech and press guarantees of the First Amendment to the United States Constitution and Article 1, § 15 of the Utah Constitution.

Secondly, it is important to note that this case does not involve a prior restraint to speak or to print or disseminate news; such a restraint could only be imposed under very stringent requirements. Rather, the right sought to be protected is the right to *gather* information. Certainly this is an important right, but it is subject to reasonable limitations. For example, in *Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965), the Supreme Court upheld the government's refusal to validate passports to Cuba even though the free flow of information was thereby restricted. In that case, the Court emphasized that "[t]he right to speak and publish does not carry with it the unrestrained right to gather information." 381 U.S. at 17, 85 S.Ct. at 1281. Certainly, freedom of the press would have little meaning if the right to gather information were unduly restricted. But gathering information is a right secondary to the right to speak and publish and is subject to restriction upon a less stringent standard than these more fundamental rights.

The First Amendment secures the right of the public (including the media) to be present at a criminal *trial*. This presumption of openness can be overcome only when it is shown that the accused's right to a fair trial is in jeopardy. The question here presented is whether this same right and presumption of openness extends to a preliminary hearing. I am convinced that there are significant historical and practical differences between a trial and a preliminary hearing, and different standards should be applied.

## THE PUBLIC RIGHT OF ACCESS TO JUDICIAL PROCEEDINGS

In 1979, the United States Supreme Court decided *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). This case involved the closure of a pretrial suppression hearing. The defendant requested a closed hearing, and the prosecution agreed. No media representative objected at the time, but three days later the newspaper requested that the transcript be made public. The trial judge accepted briefs and heard argument, but refused to release the transcript, and the newspaper appealed. In addition to Justice Stewart's majority opinion, there were three concurring opinions and a dissent joined by four justices. Although the narrow holding of the case is that a trial judge does have discretion to close a pretrial suppression hearing, the language of the opinion is much broader, on its face at least, applying to "pretrial proceedings."

Although this is the most nearly on point of any United States Supreme Court case, its clarity is obscured because of the Court's inability to speak with one voice. Chief Justice Burger's concurring opinion emphasized the historical difference between trials and pretrial proceedings. His view seems to be that there is no public right of access to pretrial proceedings. Justice Powell's opinion recognizes a First Amendment right to open pretrial proceedings, but asserts that this right was adequately considered in the trial judge's decision to restrict access to the proceeding. Justice Rehnquist appears to be of the view that there is absolutely no First Amendment right to open judicial proceedings and the trial judge has discretion to close the hearing for any reason. The four dissenters assert that the Sixth Amendment provides the public a constitutional right of access to criminal proceedings.

In 1980, the United States Supreme Court examined the question of the public's right of access to a criminal *trial* in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Again, both the accused and the prosecutor agreed to closure, but the news media objected. Like the case now before this Court, the trial judge held a hearing on the closure motion, where the media were allowed to present their arguments, but no evidence was presented and no written findings were made. The Court held that absent an overriding interest articulated in findings and supported by evidence, a trial judge may not exclude the public from a criminal trial. *Id.* at 581, 100 S.Ct. at 2829'.

In 1982, the issue came before the Court again in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). There the Court considered a state statute that required the exclusion of the public from the courtroom during the testimony of minor victims in sex offense trials. The Court held that the statute violated the First Amendment public right to access to criminal trials and was therefore invalid.

Most recently, the Court again confronted the problem of public access to criminal proceedings in *Press-Enterprise Co. v. Superior Court*, —— U.S. ——, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). This case affirms that the First Amendment right of public access to criminal trials applies to voir dire questioning of the jury panel, which, of course, is an integral part of the trial itself.

In summary, the United States Supreme Court has clearly established a First Amendment right of public access to criminal *trials*, but has not extended this right to pretrial proceedings.

## THE DIFFERENCE BETWEEN A TRIAL AND A PRELIMINARY HEARING

### A. Practical Differences

There is a significant practical difference between prejudicial publicity at a criminal trial and at a preliminary hearing. In a trial, including the jury voir dire, the identities of the jury or jury panel are known. There are several methods to shield this relatively small group from prejudicial information: they can be instructed not to read or listen to news reports for a period

of time, or if necessary, they can be sequestered. But in a pretrial proceeding, the jury is not yet known. There is no possible way that information reported at a pretrial proceeding and disseminated into the community can be kept from potential jurors. Our procedure allows a defendant to be bound over upon evidence that will not be admissible at trial. Rule 7(d)(1), U.C.A., 1953, § 77–35–7(d)(1) (1982 Repl. Vol.), provides in part:

> The findings of probable cause may be based on hearsay in whole or in part. Objections to evidence on the ground that it was acquired by unlawful means are not properly raised at the preliminary examination.

Because the preliminary examination occurs *prior* to the time that the defendant may properly raise the issue of ultimate admissibility, it *is* inevitable that some prejudicial information will be presented in many hearings.

It is true that persons who hear or read prejudicial information thus disseminated can be excluded from the jury. But at the very least, dissemination of such information into the community biases the jury panel in that it becomes necessary to exclude citizens who carefully read news reports or who are interested in following current events.

There is another important practical difference between trials and preliminary hearings. By the time of trial, an independent magistrate has made the determination that there is probable cause to believe that a crime has been committed and that the defendant is the person who committed it. Prior to the preliminary hearing, no such determination has been made. The charges are brought solely at the discretion of the prosecutor. One of the purposes of the preliminary hearing is to subject the charges to an independent magistrate to screen out those that are unfounded and to thereby preserve the accused's reputation from public humiliation.

This purpose is defeated if the preliminary hearing is public. There is no practical way to prevent this. The magistrate could not know before she held the hearing whether or not she would find probable cause; that was the purpose of the hearing. She could only open or close the hearing based on a guess as to whether there would be evidence to sustain the charges.

## B. Historical Differences

I recognize that ancient history is not necessarily the best basis to decide how rights in our society should be structured today. Nevertheless, in determining what rights rise to the level of constitutional protection, the historical backdrop of the First Amendment is an important interpretational aid. In each of the four United States Supreme Court cases involving public access to criminal proceedings, historical perspective was an important consideration. It is therefore important to recognize that in precolonial England and early colonial America, trials have *always* been public and preliminary examinations generally have not.

In the earliest reports of criminal trials in England can be found the seeds of a tradition of open trials. A record of 1565 was quoted in the *Press-Enterprise* case. This early reporter explained that "there is nothing put in writing but the enditement":

> All the rest is doone openlie in the presence of the Judges, the Justices, the enquest, the prisoner, and so many as will or can come so neare as to heare it, and all depositions and witnesses given aloude, that all men may heare from the mouth of the depositors and witnesses what is saide.

T. Smith, *De Republica Anglorum* 96 (Alston ed. 1906), *quoted in Press-Enterprise Co. v. Superior Court,* —— U.S. at ——, 104 S.Ct. at 822–23 (1984).

Conversely, Maitland wrote of preliminary examinations in 1885:

> [The] preliminary examination of accused persons has gradually assumed a very judicial form.... The place in which it is held is indeed no "open court," the public can be excluded if the magistrate

thinks that the ends of justice will thus be best answered.

F. Maitland, *Justice and Police* 129 (1885), *quoted in Gannett Co. v. DePasquale*, 443 U.S. at 389, 99 S.Ct. at 2910.

In fact, in England it was held libelous for the press to publish preliminary examinations taken before a magistrate. In *Rex v. Fisher*, 2 Camp. 563, 570–71, 170 Eng. Rep. 1253, 1255 (N.P.1811), Lord Ellenborough held:

> If any thing is more important than another in the administration of justice, it is that jurymen should come to the trial of those persons on whose guilt or innocence they are to decide, with minds pure and unprejudiced.... Trials at law, fairly reported, although they may occasionally prove injurious to individuals, have been held to be privileged. Let them continue so privileged.... But these preliminary examinations have no such privilege. Their only tendency is to prejudge those whom the law still presumes to be innocent, and to poison the sources of justice.

*Quoted in Gannett Co. v. DePasquale*, 443 U.S. at 389 n. 20, 99 S.Ct. at 2910 n. 20.

Similarly, in the United States, pretrial proceedings were generally closed if the defendant requested. *See generally* discussion *id.* at 390, 99 S.Ct. at 2911.

An examination of the historical roots of the Utah preliminary examination procedure also reveals a tradition of closed, rather than open, hearings. Prior to statehood, felony offenses were prosecuted by indictment. At statehood, the preliminary examination replaced the grand jury indictment. Utah Const. art. I, § 13. The preliminary examination fulfills the same purpose as the grand jury process in screening charges not supported by the evidence.

Obviously, grand jury proceedings are presumptively closed. Because a grand jury also has an investigatory function, there are additional reasons why its proceedings are closed to the public, but some of the same considerations apply. In *Douglas Oil Co. v. Petrol Stops, Inc.*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), the Supreme Court upheld secrecy of grand jury proceedings, saying:

> [B]y preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

441 U.S. at 219, 99 S.Ct. at 1673 (footnote omitted).

The preliminary examination is not the precise functional equivalent of a grand jury indictment, and the presumption of closure is not as strong. For example, the accused may demand that the preliminary examination be open; he may not make similar demands of the grand jury. Grand jury transcripts are sealed, even after the grand jury concludes its business; preliminary hearing transcripts should ordinarily be made public after the defendant is bound over and the criminal trial is concluded. Nevertheless, the historical roots of the preliminary hearing are in the grand jury, not in the criminal trial.

Further, from the beginning in Utah, preliminary examinations have been closed at the request of the defendant. The earliest statute after statehood provided:

> The magistrate must also, upon request of the defendant, exclude from the examination every person except his clerk, the prosecutor and his counsel, the attorney general, the defendant and his counsel, and the officer having the defendant in custody.

Revised Statutes of Utah, § 4669 (1898).

This statute remained in effect with only minor changes until 1980, when it was replaced by our present statute, which allows either party to request that the hearing be closed and vests discretion in the magistrate, rather than providing for a closed hearing to the accused as a matter of right.

## BURDEN OF PROOF FOR CLOSING A PRELIMINARY HEARING

It is true that there is a very important public interest in openness of public proceedings. To say there is a public interest, however, is not to say there is a constitutional right. This is especially true when

that public interest collides with an equally important interest in the preservation of a fair trial and a relatively undamaged reputation for those who are accused but presumed innocent.

Both historically and logically, the balance tips to the public and the media for access to a criminal trial, but to the accused for preservation of his rights and good name when access to a preliminary hearing is in issue. The majority opinion improperly places the burden of proof in imposing upon the accused the duty to establish a likelihood of prejudice.

The preliminary hearing often takes place almost immediately after the defendant is charged. Unless good cause is shown, the hearing must be within ten days if the defendant is in custody and within thirty days if he is not. § 77–35–7(c). The California court observed in *San Jose-Mercury News v. Municipal Court*, 30 Cal.3d 498, 513, 638 P.2d 655, 664, 179 Cal.Rptr. 772, 781 (1982):

> Often, therefore, it is impossible for defendant to make a showing that in his case prejudice is likely and closure justified. The evidence required may not be available at an early stage, when community reaction and the media's attitude are not clear. Moreover, defendant may have little knowledge before the hearing of the prosecution's strategy and evidence. That additionally clouds his ability to prove the value to him of closure.

(Footnote omitted.)

The North Dakota court observed in *Dickinson Newspapers, Inc. v. Jorgensen*, N.D., 338 N.W.2d 72, 80 (1983):

> It may also become unbearably expensive for the accused to obtain, develop and introduce statistics regarding the media circulation and ratings and other such matters.

I believe that the burden of proof, when the accused's right to a fair trial is in issue, should rest with the opponents of closure.

## A. The Burden of Going Forward

When an accused person or the prosecution moves to close a preliminary hearing and a media representative or member of the public objects, the court should order an *in camera* proceeding to determine if the preliminary hearing should be closed. Only the parties to the litigation are entitled to access to this proceeding. If media representatives voluntarily agree not to disclose information learned at the *in camera* hearing, they may also be allowed to attend, but in the absence of such an agreement the magistrate need not allow the media or their representatives to attend the hearing.[1] The prosecution should be required to proffer the evidence it plans to elicit to establish probable cause. The defense should be allowed to state why such evidence may be prejudicial. At this juncture, if the magistrate feels there is a reasonable possibility that the accused's right to a fair trial may be prejudiced or the hearing should be closed for some other reason (such as concern for the accused's reputation, the well-being of the victims, the safety of the witnesses, interference with ongoing investigations or the like), the magistrate should open the hearing and state on the record the reasons for the closure. This statement should be as specific as possible, consistent with the protection of the right sought to be protected. *Seattle Times Co. v. Ishikawa*, 97 Wash.2d 30, 640 P.2d 716 (1982).

At that point, the burden of going forward shifts to the opponents of closure to show that prejudice would not likely occur[2] or that less-restrictive alternative means (such as a voluntary media-court agreement) could accomplish the same purpose.

---

1. *In camera* hearings have been approved in *Seattle Times Co. v. Ishikawa*, 97 Wash.2d 30, 640 P.2d 716 (1982); *Richmond Newspapers, Inc. v. Commonwealth*, 222 Va. 574, 281 S.E.2d 915 (1981); *Williams v. Stafford*, Wyo., 589 P.2d 322 (1979).

2. Commonly, this would consist of evidence of the size of the community, the circulation or rating of the media involved, the level of attention in the community, the number of persons in the jury pool and the like.

This allocation of the burden of going forward accords with Justice Powell's view in his concurring opinion in *Gannett Co. v. DePasquale*, 443 U.S. at 401, 99 S.Ct. at 2916:

At this hearing, it is the defendant's responsibility as the moving party to make some showing that the fairness of his trial likely will be prejudiced by public access to the proceedings. Similarly, if the State joins in the closure request, it should be given the opportunity to show that public access would interfere with interests in fair proceedings or preserving the confidentiality of sensitive information. On the other hand, members of the press and public who object to closure have the responsibility of showing to the court's satisfaction that alternative procedures are available that would eliminate the dangers shown by the defendant and the State.

B. The Burden of Persuasion

The burden of persuasion depends upon the right sought to be protected by closure. If the reason for closure is to protect the accused's right to a fair trial, the burden is upon the opponents of closure to establish there is no reasonable likelihood of prejudice. If other interests are at stake, which are not constitutionally protected, such as the accused's reputation or the interests of victims, witnesses, or law enforcement, the burden is upon the proponents of closure to show that there is a serious or imminent threat to that interest. *Seattle Times Co. v. Ishikawa*, 97 Wash.2d 30, 37–38, 640 P.2d 716, 720 (1982).

In any case, the magistrate must enter written findings that state the grounds for the action taken. Otherwise, there could be no meaningful appellate review. The findings should also state the scope and duration of any closure ordered. For example, if the transcript is sealed, a specific time when it will be opened should be articulated. Ordinarily, this would be no later than conclusion of the criminal trial.

I believe the magistrate should be given broad discretion to open or close prelimi-nary hearings. Important rights to a free press and a fair trial must be balanced on a case-by-case basis. In a preliminary hearing, there are unusual threats posed to a fair trial that do not exist to the same extent in reporting the trial itself. That is the reason the burden of proof should be differently placed with a preliminary hearing than with a trial. And, as a practical matter, there will be more times when closure of a preliminary hearing is found necessary than with the trial. In this case, the writ should be issued because there were no findings, and it is impossible to know what the magistrate took into consideration. When findings are made and reasons are articulated, however, the magistrate's decision should be upheld unless there is an abuse of discretion.